Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
  *prajesh@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Thomas Spitzer*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS SPITZER, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>ROBERT C. FLEXON, DARREN R. JAMISON, JOHN J. JURIC, SCOTT W. ROBINSON, and FREDERICK S. HENCKEN III,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Thomas Spitzer ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Capstone Green Energy Corp. ("Capstone" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Capstone; and (c) review of other publicly available information concerning Capstone.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Capstone securities between June 14, 2021 and September 22, 2023, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Capstone is a California based gas turbine manufacturer that specializes in microturbine power along with heating and cooling cogeneration systems.

3. On August 15, 2023, after the closing of trading, the Company announced its inability to timely file a Form 10-Q due to an "ongoing review and investigations by the Audit Committee of financial reporting and other matters."

4. On this news, the Company's stock price fell $0.05, or 5%, to close at $0.89 per share August 16, 2023, on unusually high trading volume. The Company's stock price continued to fall the next trading session by $0.05, or 5%, to close at $0.84 per share on August 17, 2023.

5. Then, on August 18, 2023, after trading hours, the Company announced it had entered into a Fifth Amendment to its Amended and Restated Note Purchase Agreement among the Company, Goldman Sachs Specialty Lending Group, L.P. and a purchaser party. Capstone also reported receipt of a notice from the NASDAQ

exchange that the Company was not in compliance with listing requirements due to its failure to file periodic financial reports.

6.     On this news, the Company's stock price fell $0.26, or 30%, to close at $0.58 per share on August 21, 2023, on unusually high trading volume.

7.     Then, on September 22, 2023, after trading hours, the Company disclosed that certain financial statements could no longer be relied upon "as a result of apparent errors primarily related to revenue recognition associated with bill and hold transactions that were identified in the course a review by the Audit Committee[.]" The Company disclosed there were "numerous instances where bill and hold transactions did not appear to meet the requirements for revenue recognition under GAAP."

8.     Then, on September 28, 2023, the Company announced it had filed for Chapter 11 bankruptcy. On this news, the Company's stock price fell $0.10, or 17%, to close at $0.50 per share on September 28, 2023.

9.     Then, on October 4, 2023, after trading hours, it was announced that the company would be delisted, and the ticker symbol changed from CGRN to CGRNQ.

10.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had engaged in "bill and hold transactions" with customers; (2) that these transactions were not reported pursuant to generally accepted accounting principles ("GAAP"); (3) that, "as a result of apparent errors primarily related to revenue recognition associated with bill and hold transactions" the Company lacked a reasonable basis to report certain financial results and was reasonably likely to restate its financial statements; and (4) that, as a result of the foregoing, Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff Thomas Spitzer, as set forth in the accompanying certification, incorporated by reference herein, purchased Capstone securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Robert C. Flexon ("Flexon") has been the Company's Chief Executive Officer ("CEO") since August 22, 2023.

17.     Defendant Darren R. Jamison ("Jamison") has been the Company's President, CEO and Director from 2006 until August 22, 2023.

18.     Defendant John J. Juric ("Juric") has been the Company's Chief Financial Officer ("CFO") since March 6, 2023.

19.     Defendant Scott W. Robinson ("Robinson") was the Company's Interim CFO from July 2022 until March 6, 2023.

20.     Defendant  Frederick S. Hencken III ("Hencken") was the Company's CFO from October 2019 to July 2022.

21.     Defendants Flexon, Jamison, Juric, Robinson, and Hencken (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Capstone is a California based gas turbine manufacturer that specializes in microturbine power along with heating and cooling cogeneration systems.

**Materially False and Misleading**

**Statements Issued During the Class Period**

23.    The Class period begins on June 14, 2021.[1] On that date, the Company submitted to the SEC its Annual Report Form 10-K for the fiscal year ended March 31, 2021 ("2021 10-K").  The 2021 10-K reported the following revenue (amounts in millions):

| | Year Ended March 31, | | | | | |
| | 2021 | | | 2020 | | |
| | Revenue | Megawatts | Units | Revenue | Megawatts | Units |
|---|---|---|---|---|---|---|
| Microturbine Product | $ 34.1 | 33.5 | 234 | $ 33.8 | 33.2 | 214 |
| Accessories | 2.4 | | | 1.5 | | |
| Total Product and Accessories | 36.5 | | | 35.3 | | |
| Parts and Service | 31.1 | | | 33.6 | | |
| Total | $ 67.6 | | | $ 68.9 | | |

24.    The 2021 10-K further reported the below table indicating revenue:

| | Year Ended March 31, 2021 | | | |
| (Unaudited) | Fourth Quarter | Third Quarter | Second Quarter | First Quarter |
|---|---|---|---|---|
| Revenue | $ 17,862 | $ 20,676 | $ 14,906 | $ 14,193 |
| Cost of goods sold | 20,413 | 17,204 | 12,344 | 10,820 |
| Gross margin | (2,551) | 3,472 | 2,562 | 3,373 |
| Operating expenses: | | | | |
| R&D | 714 | 735 | 599 | 370 |
| SG&A | 5,158 | 4,816 | 4,872 | 3,546 |
| Loss from operations | (8,423) | (2,079) | (2,909) | (543) |
| Net loss (1) | $ (4,757) | $ (7,595) | $ (4,212) | $ (1,823) |
| Net loss per common share—basic and diluted (1) | $ (0.39) | $ (0.69) | $ (0.38) | $ (0.17) |

25.    The 2021 10-K describes the Company's revenue recognition policy as follows:

> ***Our revenue consists of sales of products, parts, accessories and service,*** which includes FPPs, net of discounts. Our distributors purchase products, parts and FPPs for sale to end users and are also required to provide a variety of additional services, including application engineering, installation, commissioning and post-commissioning service. Our standard terms of sales to distributors and

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

direct end users include transfer of title, care, custody and control at the point of shipment, payment terms ranging from full payment in advance of shipment to payment in 90 days, no right of return or exchange, and no post-shipment performance obligations by us except for warranties provided on the products and parts sold. ***We recognize revenue when all of the following criteria are met: persuasive evidence of an arrangement exists, delivery has occurred or service has been rendered, selling price is fixed or determinable and collectability is reasonably assured.***

26.    The 2021 10-K stated that Capstone's "disclosure controls and procedures were effective as of March 31, 2021[.]" It also stated that "management concluded that [Capstone] maintained effective internal control over financial reporting as of March 31, 2021."

27.    On July 14, 2022, the Company filed Annual Report Form 10-K for the fiscal year ended March 31, 2022 ("2022 10-K"). The 2022 10-K reported the following financial results (amounts in thousands, except for share amounts):

| | Year Ended March 31, | |
| | 2022 | 2021 |
|---|---|---|
| Revenue: | | |
| Product and accessories | $ 37,181 | $ 36,517 |
| Parts and service | 32,464 | 31,119 |
| Total revenue | 69,645 | 67,636 |
| Cost of goods sold: | | |
| Product and accessories | 40,483 | 42,025 |
| Parts and service | 20,624 | 18,756 |
| Total cost of goods sold | 61,107 | 60,781 |
| Gross margin | 8,538 | 6,855 |
| Operating expenses: | | |
| Research and development | 3,359 | 2,417 |
| Selling, general and administrative | 22,980 | 18,391 |
| Total operating expenses | 26,339 | 20,808 |
| Loss from operations | (17,801) | (13,953) |
| Other income | 642 | 4,993 |
| Interest income | 21 | 30 |
| Interest expense | (5,004) | (5,156) |
| Gain (loss) on debt extinguishment | 1,950 | (4,282) |
| Loss before provision for income taxes | (20,192) | (18,368) |
| Provision for income taxes | 19 | 19 |
| Net loss | (20,211) | (18,387) |
| Less: Deemed dividend on purchase warrant for common shares | — | 15 |
| Net loss attributable to common stockholders | $(20,211) | $(18,402) |
| | | |
| Net loss per common share attributable to common stockholders—basic and diluted | $   (1.37) | $   (1.63) |
| Weighted average shares used to calculate basic and diluted net loss per common share attributable to common stockholders | 14,727 | 11,280 |

28.     The 2022 10-K described Capstone's backlog as follows:

Net product orders for Fiscal 2022 were $31.8 million and contributed to an ending ***backlog of $25.3 million at March 31, 2022***. The book-to-bill ratio was 1.1:1 for Fiscal 2022. ***Book-to-bill ratio is the ratio of new orders we received to units shipped and billed during a period. However, because our backlog represents only the estimated amount of future product revenue to be recognized under negotiated contracts as shipments convert backlog to recognized revenue for accounting purposes,*** we may not be able to fully realize the revenue value reported in our backlog, and our backlog may not be indicative of future revenues. A portion of our backlog is concentrated in the international oil and gas market which may impact the overall timing of shipments or the conversion of backlog to revenue.

29.     The 2022 10-K described the Company's revenue recognition policy:

***Our revenue consists of sales of products, parts, accessories and service,*** which includes FPPs, net of discounts. Our distributors purchase products, parts and FPPs for sale to end users and are also required to provide a variety of additional services, including application engineering, installation, commissioning and post-commissioning service. Our standard terms of sales to distributors and direct end users include transfer of title, care, custody and control at the point of shipment, payment terms ranging from full payment in advance of shipment to payment in 90 days, no right of return or exchange, and no post-shipment performance obligations by us except for warranties provided on the products and parts sold. ***We recognize revenue when all of the following criteria are met: persuasive evidence of an arrangement exists, delivery has occurred or service has been rendered, selling price is fixed or determinable and collectability is reasonably assured.***

30.     The 2022 10-K further stated that Capstone's "disclosure controls and procedures were effective as of March 31, 2022[.]" The report also stated that "management concluded that we maintained effective internal control over financial reporting as of March 31, 2022."

31.     On August 11, 2022, Capstone announced its first quarter 2023 financial results in a press release that stated, in relevant part:

First Quarter Fiscal 2023 Highlights:

▪     Revenues for the first quarter ending June 30, 2022 were $18.7 million, up 18% from $15.8 million in revenue during the fourth quarter ended March 31, 2022, and up 16% from revenues of $16.1 million in the year-ago June quarter.

*          *          *

▪       Gross product bookings for the first quarter ending June 30, 2022, were $12.4 million, down slightly from $12.7 million in the previous quarter ended March 31, 2022.

▪       The product Book-to-Bill Ratio dropped to 1.4:1 in first quarter ending June 30, 2022, from 1.7:1 as a result of lower product shipments in the previous quarter ended March 31, 2022. Ending product backlog on June 30, 2022 was $24.8 million compared to $25.3 million on March 31, 2022.

32.       The same day, Capstone filed its first quarter 2023 report on Form 10-Q for the period ended June 30, 2022, affirming the previously reported financial results. It also stated that the Company's "disclosure controls and procedures were effective as of June 30, 2022."

33.       On November 14, 2022, Capstone announced its second quarter 2023 financial results in a press release that stated, in relevant part:

Second Quarter and First Half Fiscal 2023 Highlights:

▪       Revenues for the second quarter ending September 30, 2022, were $20.8 million, up 11% from $18.7 million in revenue during the first quarter ended June 30, 2022, and up 21% from $17.2 million in the year-ago September quarter.

▪       Revenues for the first half of fiscal 2023 totaled $39.4 million, up 18% from $33.3 million from the first half of fiscal 2022, as the Company executes its EaaS growth strategy.

*       *       *

▪       Gross product bookings for the second quarter ending September 30, 2022, were robust at $15.4 million, up from $12.4 million in the previous quarter ended June 30, 2022, demonstrating the ongoing success of the company's current growth strategy.

▪       The product Book-to-Bill Ratio improved to 1.6:1 in the second quarter ending September 30, 2022. The ending product backlog on September 30, 2022, was $28.9 million, up $4.1 million or 16.5% from $24.8 million on June 30, 2022.

34.       The same day, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2022, affirming the previously reported financial results. The report also stated that the Company's "disclosure controls and procedures were effective as of September 30, 2022."

35.   On February 13, 2023, the Company announced its third quarter 2023 financial results in a press release that stated, in relevant part:

Third Quarter and Nine Months Fiscal 2023 Highlights:

▪   Revenues for the third quarter ending December 31, 2022, were $19.6 million, down 6% from $20.8 million in revenue during the second quarter ended September 30, 2022, and down 5% from $20.6 million in the year-ago third quarter.

▪   Revenues for the first nine months of fiscal 2023 totaled $59.0 million, up 9.5% from $53.9 million from the nine months of fiscal 2022.

*       *       *

▪   Gross product bookings for the third quarter ending December 31, 2022, were $6.9 million, down from $16.3 million in the previous quarter ended September 30, 2022, as bookings slowed in December.

36.   On February 14, 2023, the Company filed its quarterly report on Form 10-Q for the period ended December 31, 2022, affirming the previously reported financial results. It also stated that the Company's "disclosure controls and procedures were effective as of December 31, 2022."

37.   On June 30, 2023, the Company filed a notification of inability to timely file its annual report on Form 10-K. Specifically, the Company stated:

The Company needs additional time as a result of the following:

●   The Company is still in the process of compiling required information to complete the Annual Report and Marcum LLP ("Marcum"), its independent registered public accounting firm, requires additional time to complete its audit of the consolidated financial statements as of and for the year ended March 31, 2023 to be incorporated in the Annual Report, which includes, but is not limited to, completing its procedures pertaining to certain matters being reviewed by the Company's Audit Committee and matters relating to the NPA (as defined below).

●   As the end of the year ended March 31, 2023 the Company was, and the Company currently is, in violation of certain of its covenants, including the minimum liquidity covenant, contained in its Amended and Restated Note Purchase Agreement, as amended (the "NPA"), with Goldman Sachs Specialty Lending Group, L.P. ("Goldman"). To address those defaults and other matters (including the maturity of the notes on October 1, 2023), the Company has been working with Goldman to enter into a waiver and amendment to the NPA, which has consumed a significant amount of the Company's finance and accounting personnel's time. There can be no assurance that the Company will be able to enter

into a waiver and amendment, and such waiver and amendment will likely impose additional burdens on the Company.

38.    The above statements identified in ¶¶ 23-37 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had engaged in "bill and hold transactions" with customers; (2) that these transactions were not reported pursuant to GAAP; (3) that, "as a result of apparent errors primarily related to revenue recognition associated with bill and hold transactions," the Company lacked a reasonable basis to report certain financial results and was reasonably likely to restate its financial statements; and (4) that, as a result of the foregoing, Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

39.    On August 15, 2023, after the closing of trading, the Company announced its inability to timely file a Form 10-Q due to an "ongoing review and investigations by the Audit Committee of financial reporting and other matters." Specifically, the Company stated, in relevant part:

> ***The Company needs additional time because the Company still in the process of compiling information*** necessary to complete both the Quarterly Report and the Company's Annual Report on Form 10-K for the fiscal year ended March 31, 2023 (the "Annual Report"), and Marcum LLP ("Marcum"), the Company's independent registered public accounting firm, ***requires additional time to complete its audit of the consolidated financial statements*** as of and for the year ended March 31, 2023 to be incorporated in the Annual Report, and will ***need additional time to review*** the consolidated financial statements as of and for the year ended March 31, 2023 to be included in the Quarterly Report, once the Company has completed their preparation.

40.    On this news, the Company's stock price fell $0.05, or 5%, to close at $0.89 per share on August 16, 2023 on unusually high trading volume. The Company's stock price continued to fall another $0.05, or 5%, to close at $0.84 per share on August 17, 2023.

41.     Then, on August 18, 2023, after trading hours, the Company announced it had entered into a Fifth Amendment to its Amended and Restated Note Purchase Agreement among the Company, Goldman Sachs Specialty Lending Group, L.P. and a purchaser party. Capstone also reported receipt of a notice from the NASDAQ exchange that the Company was not in compliance with listing requirements due to its failure to file periodic financial reports. On this news, the Company's stock price fell $0.26, or 30%, to close at $0.58 per share on August 21, 2023, on unusually high trading volume.

42.     Then, on September 22, 2023, after trading hours, the Company disclosed that following an audit, certain financial statements could no longer be relied upon "as a result of apparent errors primarily related to revenue recognition associated with bill and hold transactions that were identified in the course a review by the Audit Committee[.]" The Company disclosed that "the Audit Committee identified numerous instances where bill and hold transactions did not appear to meet the requirements for revenue recognition under GAAP. As a result, the Audit Committee has concluded that, in most such cases, revenue should not have been recognized until a later time when the products were subsequently shipped to the customer." The Audit Committee determined that

the Company's previously issued consolidated financial statements as of each and for each of the following fiscal periods are ***materially incorrect***, require restatement and should no longer be relied upon:

- The first three fiscal quarters of the fiscal year ended March 31, 2023 and the comparable periods of the fiscal year ended March 31, 2022;

- The fiscal year ended March 31, 2022; and

- The fiscal year ended March 31, 2021 (the "Subject Periods").

43.     The Company's September 22, 2023 filing further disclosed:

***Due to the impact of the above matters on the presentation of the Company's financial statements*** in its Form 10-K for the fiscal year ended March 31, 2023, in its Form 10-Q for the quarter ended June 30,

2023 and in its Form 10-Q for the quarter ended September 30, 2023, *the Company has not timely filed its Annual Report on Form 10-K for the fiscal year ended March 31, 2023 or its Quarterly Report on Form 10-Q for the quarterly period ended June 30, 2023* with the SEC, and may not timely file its Quarterly Report on Form 10-Q for the quarterly period ended September 30, 2023.

44.     Then, on September 28, 2023 the Company announced it had filed for Chapter 11 bankruptcy.  On this news, the Company's stock price fell $0.10, or 17%, to close at $0.50 per share on September 28, 2023.

45.     Then, on October 4, 2023, after trading hours, it was announced that the company would be delisted, and the ticker symbol changed from CGRN to CGRNQ.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Capstone securities between June 14, 2021 and September 22, 2023, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Capstone's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Capstone shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Capstone or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Capstone; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

52.     The market for Capstone's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Capstone's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Capstone's securities relying upon the integrity of

the market price of the Company's securities and market information relating to Capstone, and have been damaged thereby.

53.   During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Capstone's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Capstone's business, operations, and prospects as alleged herein.

54.   At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Capstone's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

55.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

56.   During the Class Period, Plaintiff and the Class purchased Capstone's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the

market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

57.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Capstone, their control over, and/or receipt and/or modification of Capstone's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Capstone, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

58.     The market for Capstone's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Capstone's securities traded at artificially inflated prices during the Class Period.  On June 16, 2021, the Company's share price closed at a Class Period high of $7.35 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Capstone's securities and market information relating to Capstone, and have been damaged thereby.

59.     During the Class Period, the artificial inflation of Capstone's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.

1   As described herein, during the Class Period, Defendants made or caused to be made
2   a series of materially false and/or misleading statements about Capstone's business,
3   prospects, and operations.  These material misstatements and/or omissions created an
4   unrealistically positive assessment of Capstone and its business, operations, and
5   prospects, thus causing the price of the Company's securities to be artificially inflated
6   at all relevant times, and when disclosed, negatively affected the value of the
7   Company shares.  Defendants' materially false and/or misleading statements during
8   the Class Period resulted in Plaintiff and other members of the Class purchasing the
9   Company's securities at such artificially inflated prices, and each of them has been
10  damaged as a result.

11      60.    At all relevant times, the market for Capstone's securities was an
12  efficient market for the following reasons, among others:

13          (a)    Capstone shares met the requirements for listing, and was listed
14  and actively traded on the NASDAQ, a highly efficient and automated market;

15          (b)    As a regulated issuer, Capstone filed periodic public reports with
16  the SEC and/or the NASDAQ;

17          (c)    Capstone regularly communicated with public investors via
18  established market communication mechanisms, including through regular
19  dissemination of press releases on the national circuits of major newswire services
20  and through other wide-ranging public disclosures, such as communications with the
21  financial press and other similar reporting services; and/or

22          (d)    Capstone was followed by securities analysts employed by
23  brokerage firms who wrote reports about the Company, and these reports were
24  distributed to the sales force and certain customers of their respective brokerage firms.
25  Each of these reports was publicly available and entered the public marketplace.

26      61.    As a result of the foregoing, the market for Capstone's securities
27  promptly digested current information regarding Capstone from all publicly available
28  sources and reflected such information in Capstone's share price. Under these

circumstances, all purchasers of Capstone's securities during the Class Period suffered similar injury through their purchase of Capstone's securities at artificially inflated prices and a presumption of reliance applies.

62.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

63.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement

was authorized or approved by an executive officer of Capstone who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

64.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Capstone's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

66.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Capstone's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

67.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Capstone's financial well-being and prospects, as specified herein.

68.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Capstone's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Capstone and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

69.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

70.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts

were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Capstone's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

71.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Capstone's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Capstone's securities during the Class Period at artificially high prices and were damaged thereby.

72.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Capstone was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Capstone securities, or, if they had acquired

such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

73.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

74.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

75.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

76.    Individual Defendants acted as controlling persons of Capstone within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the

power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

78.     As set forth above, Capstone and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  October 13, 2023

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Pavithra Rajesh*

Robert V. Prongay
Charles Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**

Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Thomas Spitzer*

**SWORN CERTIFICATION OF PLAINTIFF**

**CAPSTONE GREEN ENERGY CORPORATION SECURITIES LITIGATION**

I, Thomas Spitzer, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Capstone Green Energy securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Capstone Green Energy securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

10/12/2023

_____
Date

_____
Thomas Spitzer

**Thomas Spitzer's Transactions in Capstone Green Energy Corporation (CGRN)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 2/13/2023 | Bought | 688.000 | $1.9400 |
| 2/13/2023 | Bought | 2,808.000 | $1.9382 |
| 2/13/2023 | Bought | 77.000 | $1.9300 |
| 2/13/2023 | Bought | 2.000 | $1.9224 |
| 2/13/2023 | Bought | 0.182 | $1.9700 |