**POMERANTZ LLP**
Brenda Szydlo (admitted *pro hac vice*)
Dean P. Ferrogari (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: bszydlo@pomlaw.com
dferrogari@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Jonathan Stern (admitted *pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jstern@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

THOMAS SPITZER, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

ROBERT C. FLEXON, DARREN R. JAMISON, JOHN J. JURIC, SCOTT W. ROBINSON, and FREDERICK S. HENCKEN III,

Defendants.

Case No. 2:23-cv-08659-HDV (MARx)

CLASS ACTION

**JOINT DECLARATION OF BRENDA SZYDLO AND JONATHAN STERN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS**

We, BRENDA SZYDLO and JONATHAN STERN, declare as follows:

1. I, Brenda Szydlo, am an attorney admitted to practice *pro hac vice* in this Court and a Partner at Pomerantz LLP ("Pomerantz"), Co-Lead Counsel along with The Rosen Law Firm, P.A. ("Rosen"), for Lead Plaintiff Michael Denisevich and Plaintiff Kevin Rudisill (collectively, "Plaintiffs"),[1] in the above-captioned action (the "Action"). I respectfully submit this Declaration in support of Plaintiffs' motions for: (1) final approval of the Settlement and Plan of Allocation, and final certification of the Settlement Class; and (2) attorneys' fees, reimbursement of expenses, and awards to Plaintiffs. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2. I, Jonathan Stern, am an attorney admitted to practice *pro hac vice* in this Court and a Partner at Rosen, Co-Lead Counsel along with Pomerantz, for Plaintiffs in the Action. I respectfully submit this Declaration in support of Plaintiffs' motions for: (1) final approval of the Settlement and Plan of Allocation, and final certification of the Settlement Class; and (2) attorneys' fees, reimbursement of expenses, and awards to Plaintiffs. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

3. The Settlement creates a gross settlement fund of $2,250,000, plus accrued interest. After attorneys' fees, reimbursement of expenses, awards to Plaintiff, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of all persons or entities who purchased or otherwise acquired publicly traded Capstone Green Energy

---

[1]All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement, dated April 4, 2025 (the "Stipulation"). Dkt. No. 61-1.

1

JOINT DECLARATION OF BRENDA SZYDLO AND JONATHAN STERN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS, 2:23-cv-08659-HDV (MARx)

Corporation Securities ("Capstone" or the "Company") between November 11, 2020 and October 4, 2023, inclusive, and were allegedly damaged thereby.[2]

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

4. On October 13, 2023, Thomas Spitzer filed a Class Action Complaint for Violations of the Federal Securities Laws in the United States District Court for the Central District of California, styled *Spitzer v. Flexon*, No. 23-cv-08659 (C.D. Cal.). Dkt. No. 1.

5. On February 12, 2024, the Court appointed Michael Denisevich as Lead Plaintiff and approved Mr. Denisevich's selections of Pomerantz and Rosen as Co-Lead Counsel ("Lead Counsel") for the class. Dkt. No. 38 at 2.

6. On February 28, 2024, the Court entered the Parties' Proposed Order Regarding Scheduling for Amended Complaint and Answer or Motion to Dismiss the Amended Complaint, which included an agreement that Defendants would not object to Plaintiffs filing a Second Amended Complaint within thirty (30) days of any restatement of previously issued financial statements of non-party Capstone,[3] provided Plaintiffs give Defendants notice of their intent to file a Second Amended Complaint within five days of the restatement's filing. Dkt. No. 42 at 2 n.1.

7. On April 26, 2024, Plaintiffs filed an Amended Class Action Complaint for Violation of the Federal Securities Laws, adding Plaintiff Kevin Rudisill to the Action. Dkt. No. 43. On June 13,

---

[2] Excluded from the Settlement Class are Defendants, the officers and directors of Capstone, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded are any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion in accordance with the requirements set by the Court.

[3] Capstone and its affiliates, filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court") on September 28, 2023. The lead bankruptcy case is styled *In re: Capstone Green Energy Corporation, et al.*, No. 23-11634-LSS (Bank. D. Del.). None of these entities is a defendant in this Action.

2024, Capstone filed a restatement to correct certain previously issued financial statements and Plaintiffs provided Defendants notice of their intent to file a Second Amended Complaint. *See* Dkt. No. 44.

8.  On July 29, 2024, Plaintiffs filed a Second Amended Complaint asserting claims against Defendants under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Dkt. No. 46. On September 6, 2024, the Court stayed the Action and struck the deadlines set in the Scheduling Order to allow the parties to engage in discussions to potentially resolve this Action (the "Stay Order"). Dkt. No. 48 at 2.

9.  On October 4, 2024, November 8, 2024, and December 13, 2024, the Parties filed Joint Status Reports regarding the discussions to potentially resolve this Action. Dkt. Nos. 49 at 2, 51 at 2, 53 at 2.

10. On January 15, 2025, in accordance with Local Rule 16-15.7, the Parties notified the Court that they had reached a settlement in principle to fully resolve the Parties' ongoing dispute. Dkt. No. 55 at 2. The agreement was memorialized in a memorandum of understanding (the "Memorandum of Understanding") which was fully executed on January 30, 2025. The Memorandum of Understanding sets forth, among other things, the Parties' agreement to fully and finally settle and release all claims that were asserted or could have been asserted in the Action in return for a cash payment by or on behalf of Defendants of $2,250,000 for the benefit of the Settlement Class. The Memorandum of Understanding was formalized in the Stipulation that was executed on April 4, 2025. Dkt. No. 61-1.

11. On June 5, 2025, the Court entered an order preliminarily approving the Settlement and directing the provision of notice. Dkt. No. 65.

3

JOINT DECLARATION OF BRENDA SZYDLO AND JONATHAN STERN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS, 2:23-cv-08659-HDV (MARx)

## II.    OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

12.    After Plaintiffs filed their Second Amended Complaint and prior to the filing of a motion by dismiss by Defendants, the Court stayed the Action, pursuant to the Parties' request, on September 6, 2024 to allow the Parties to engage in discussions to potentially resolve this Action. Dkt. No. 48. The negotiations between Lead Counsel and Defendants' Counsel that produced the Settlement were serious and informed. Indeed, the Settlement was achieved only after intense arm's-length negotiations, including five months of telephone conference calls and emails between the Parties' counsel. *See* Dkt. Nos. 47-56.

13.    Through a comprehensive legal and factual investigation, the filing of two complaints, and months of settlement negotiations, Plaintiffs and Lead Counsel acquired fulsome understandings of the Parties' respective positions on the legal and factual issues in the case.

14.    There are no signs of collusion here. Lead Counsel's attorneys' fees, expenses, and any awards to Plaintiffs are to be determined by the Court and awarded from the Settlement Fund. This precludes a finding that there is any "clear sailing" agreement providing that counsel fees are to be paid separate and apart from class funds.

15.    Lead Counsel believes that the Settlement is a fair, reasonable, and adequate result for the Settlement Class. The Settlement confers a substantial benefit to the Settlement Class, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

16. As set forth herein, and in the accompanying Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, and Final Certification of Settlement Class ("Final Approval Brief"), the Settlement represents almost 23% of the approximately $9.990 million in estimated aggregate damages under a conservative damages analysis—should all the claims alleged survive to trial, should a class be certified, should a jury adopt the expert damages model of Plaintiffs, and should Defendants have the ability to pay such a judgment. A guaranteed cash settlement that provides a substantial benefit in the face of these challenges – not to mention the appeals that would likely be filed should Plaintiffs prevail – is a favorable outcome. In light of these circumstances, and especially when the Settlement is the product of a comprehensive legal and factual investigation and arm's length negotiations by experienced counsel, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

17. For litigating this Action on a contingency basis and negotiating the Settlement, Lead Counsel respectfully requests attorneys' fees in the amount of 33% of the Settlement Fund, or $742,500, plus any interest earned on this amount at the same rate as earned by the Settlement Fund. This fee request is within the reasonable range of percentages typically awarded in securities class actions in the Ninth Circuit.

18. The favorable reaction of the Settlement Class also supports the reasonableness of the Settlement and fee request. Pursuant to the Notice, exclusion requests and objections to the Settlement must be received by October 23, 2025. To date, Lead Counsel and the Claims Administrator have not received any objections to the Settlement and only one request for exclusion. *See* Declaration of Sarah Evans Concerning: (A) Mailing and Emailing of Notice; (B) Publication of the Summary Notice; and

(C) Report on Requests for Exclusion and Objections ("Evans Decl.").[4] ¶¶14-15. If Lead Counsel or the Claims Administrator receive any objection or additional exclusion requests, Plaintiffs will address them in their reply papers, due on November 6, 2025.

**III. NOTICE PROCEDURES**

19. At Lead Counsel's direction, and pursuant to the Court's Preliminary Approval Order, on July 7, 2025, Strategic Claims Services ("SCS" or the "Claims Administrator") published the Summary Notice on the *Investor's Business Daily* and transmitted it over *GlobeNewswire*. Evans Decl. ¶11. The Claims Administrator also published the Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website on June 24, 2025. *Id.* ¶13.

20. To date, SCS has mailed and/or emailed 37,868 Notice and Claim Forms ("Notice Packet") to potential Settlement Class Members. *Id.* ¶9. On June 25, 2025, SCS caused a letter to be mailed and/or e-mailed to the 2,464 nominees contained in the SCS master mailing list. *Id.* ¶4. The letter notified them of the Settlement and stated that they must either (a) within seven (7) calendar days of receipt of the letter, request from the Claims Administrator sufficient copies of the Notice Packet or the link to the electronic Notice Packet on the Settlement website to forward to all such beneficial owners/purchasers and, within seven (7) calendar days of receipt of those Notice Packets or links to the electronic Notice Packet, forward them to all such beneficial owners/purchasers; or (b) within seven (7) calendar days of receipt of the letter, provide a list of the names, addresses, and email addresses of all such beneficial owners/purchasers to the Claims Administrator. Dkt. No. 61-3 (Notice), ¶77. A copy of the letter sent to these nominees is attached as Exhibit B to the Evans Decl. Evans Decl. ¶4.

[4] A true and correct copy of the Evans Decl. is attached hereto as Exhibit 1.

## IV. PLAN OF ALLOCATION

21. Pursuant to the Preliminary Approval Order, the Notice fully described the proposed Plan of Allocation. *See* Dkt. No. 61-3 (Notice), ¶¶43-62. Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' damages expert, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same conservative damages report Plaintiffs used to estimate its maximum recoverable damages, and it closely tracks Plaintiffs' theory of the case.

22. If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated Authorized Claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.

23. The Plan of Allocation is tailored to compensate the losses of Settlement Class Members equitably and is based upon time periods during the Class Period when various corrective disclosures occurred, consistent with the loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

## V. THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

24. The proposed Settlement is the culmination of careful, economical litigation followed by protracted arm's length settlement negotiations. Here, Lead Counsel: (i) conducted a comprehensive investigation which included interviews with former employees of Capstone; (ii) engaged in detailed

reviews of Capstone's SEC filings, press releases, and other publicly available information; (iii) researched the applicable law with respect to the claims asserted in the Action and the potential defenses thereto, in addition to relevant accounting and SEC guidance; (iv) had consultations with experts; (v) prepared and filed two complaints; (vi) engaged in arm's-length settlement negotiations; (vii) secured the Court's preliminary approval of the Settlement; and (viii) oversaw the provision of Notice to the Settlement Class by the Claims Administrator.

25. Pomerantz and Rosen have been appointed as lead or co-lead counsel in many complex securities class actions, and have recovered substantial amounts of money for clients and class members. *See* Dkt. Nos. 20-5—20-6 (Lead Counsel's Resumes). Indeed, Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial, and other factors related to collectability of any settlement or judgment. Plaintiffs faced multiple procedural hurdles and significant merit-based risks if the Action were to proceed. Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

26. Throughout the litigation and settlement negotiations, the Defendants were represented by attorneys from Latham & Watkins LLP ("Latham"), who are very skilled and highly respected counsel. They staffed the case with talented and experienced lawyers and advocated forcefully for their clients.

27. Plaintiffs and the Settlement Class face numerous risks if this Action does not settle. Indeed, continued litigation could result in lesser or no recovery. Such risks include the fact that the Court might grant Defendants' anticipated motion to dismiss or anticipated motion for summary judgment. Discovery of Defendants' internal documents could have borne out Defendants' positions.

8

JOINT DECLARATION OF BRENDA SZYDLO AND JONATHAN STERN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS, 2:23-cv-08659-HDV (MARx)

Although Lead Counsel believes that Plaintiffs' claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiffs would defeat Defendants' anticipated motion to dismiss. In their motion to dismiss, Defendants likely would have argued that Plaintiffs failed to adequately allege any false statements, scienter, or loss causation. The risk of dismissal due to the heightened pleadings standards supports approval of the Settlement. Additionally, if the Court were to grant Defendants' motion for summary judgment, then Plaintiffs would have spent years, thousands of attorney hours, hundreds of thousands of dollars (if not more) in costs, and substantial judicial resources, and still get nothing.

28. Had the Parties continued to litigate this Action, in addition to engaging in discovery, Plaintiffs would have had to move for class certification. This motion would be expensive and time-consuming, requiring Plaintiffs to produce documents, sit for depositions, and engage an expert to opine on the issue of market efficiency. In our experience, motions for class certification are typically vigorously opposed by defendants in securities class actions and there can be no assurance that such motion would be granted.

29. Likewise, the jury might find against Plaintiffs at trial, recovering nothing for Plaintiffs and the Settlement Class after expending significantly more time, expense, judicial resources, and the jury's time.

30. Even if Plaintiffs prevailed at trial and obtained a favorable jury verdict, there remained a real risk that it might be reversed on appeal. In that case, in addition to all the costs of taking a case through trial, the appeal would be time consuming, taxing the Ninth Circuit's resources, and Plaintiffs again would be left without any recovery.

31. Further, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Disentangling the market's reaction to various pieces of news is a complicated
9

JOINT DECLARATION OF BRENDA SZYDLO AND JONATHAN STERN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS, 2:23-cv-08659-HDV (MARx)

concept. Defendants would oppose any expert Plaintiffs retained with an equally well-credentialed expert expressing the opposite view, and it is impossible to predict how a jury would react to this battle of experts. Plaintiffs' damages expert calculated that the estimated aggregate damages in this Action were approximately $9.990 million under a conservative damages analysis. Defendants would, of course, contend that damages are lower, or zero.

32. Indeed, in a factually and legally complex securities class action lawsuit such as this, responsible counsel cannot be certain that they will be able to obtain – and enforce – a judgment at or near the full amount of the class-wide damages that they would propose.

## VI. THE FEE APPLICATION IS FAIR AND REASONABLE

33. The Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses, plus interest, in an amount not to exceed $125,000. Dkt. No. 61-3 (Notice), ¶5. As set forth in the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs (the "Fee Brief"), filed herewith, Lead Counsel's request for 33% of the common fund falls in line with similar awards that courts in this Circuit have granted.

34. Lead Counsel achieved a favorable result for the Settlement Class at its own risk and expense. Throughout this litigation, Lead Counsel was committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement Class's claims. As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

**A. Lead Counsel's Work and Expertise**

35. Lead Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation. During the PSLRA-mandated discovery stay, Lead Counsel reviewed Capstone's public filings and statements during the Class Period, as well as other news reports and public information relating to Capstone. Through its investigation, Lead Counsel determined the scope of the claims Plaintiffs could bring, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions. Ultimately, Lead Counsel ably synthesized these facts into a compelling Second Amended Complaint. So informed, Plaintiffs were better able to judge the strength of its claims, the adequacy of the Settlement, and the fairness and adequacy of the Plan of Allocation.

36. Lead Counsel: (i) conducted a comprehensive investigation which included interviews with former employees of Capstone; (ii) engaged in detailed reviews of Capstone's SEC filings, press releases, and other publicly available information; (iii) researched the applicable law with respect to the claims asserted in the Action and the potential defenses thereto, in addition to relevant accounting and SEC guidance; (iv) had consultations with experts; (v) prepared and filed two complaints; (vi) engaged in arm's-length settlement negotiations; (vii) secured the Court's preliminary approval of the Settlement; and (viii) oversaw the provision of Notice to the Settlement Class by the Claims Administrator.

37. The total amount of time expended by attorneys and professional staff employed by Pomerantz is 347.35 hours in this Action. The total amount of time expended by attorneys and professional staff employed by Rosen is 481.10 hours in this Action. In total, Lead Counsel expended 828.45 hours in prosecuting the Action. This number is derived from the time records that Lead Counsel regularly maintained. A listing of the professionals who worked on this matter, the number of hours

11

JOINT DECLARATION OF BRENDA SZYDLO AND JONATHAN STERN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS, 2:23-cv-08659-HDV (MARx)

spent by each such professional, and their hourly rates is set forth in detail in the Declaration of Brenda Szydlo on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Szydlo Fee Declaration") (¶¶4-5) and the Declaration of Jonathan Stern on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Stern Fee Declaration") (¶¶4-5).[5] The total value of the services performed in this case by Pomerantz and Rosen, is $252,304.00, and $413,587.40, respectively, for a grand total of $665,891.40.

38. If Lead Counsel's request for attorneys' fees in the amount of 33% of the Settlement is granted, Lead Counsel would receive a fee of $742,500. This fee award would represent a lodestar multiplier of approximately 1.12. This multiplier is materially below other multipliers that courts in this Circuit typically award in securities class actions.

39. As reflected in the firm resumes, Lead Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases. *See* Dkt. Nos. 20-5—20-6 (Lead Counsel Resumes).

40. Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiffs' reply papers in support of the motions, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, but will not seek additional compensation for this work.

**B. The Caliber of Opposing Counsel**

41. Latham represented Defendants throughout this Action. Latham is a highly respected law firm with substantial securities litigation experience and resources. Defendants' counsel zealously

[5] True and correct copies of the Szydlo Fee Declaration and the Stern Fee Declaration are attached hereto as Exhibits 2 and 3, respectively.

12

JOINT DECLARATION OF BRENDA SZYDLO AND JONATHAN STERN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS, 2:23-cv-08659-HDV (MARx)

advocated for their clients. In the face of this opposition, Plaintiffs and Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade the Defendants to settle it on terms that were favorable to the Class.

**C. The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases**

42. Lead Counsel undertook this class action on a contingency fee basis. As discussed above, and in the Final Approval Brief, Lead Counsel assumed significant risk in bringing these claims to a successful conclusion. Those risks are also relevant to an award of attorneys' fees. We describe in detail above, and in the Fee Approval Brief, the risks Lead Counsel assumed and the time and expenses it incurred without ever being compensated.

43. From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would require. Lead Counsel has received no compensation from this Action to date.

44. The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

45. As a result of persistent efforts in the face of substantial risks and uncertainties, Lead Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Lead Counsel's efforts and the favorable result achieved, we believe that a 33% fee is reasonable and that the Court should approve such a request.

13

JOINT DECLARATION OF BRENDA SZYDLO AND JONATHAN STERN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS, 2:23-cv-08659-HDV (MARx)

**D. The Reaction of the Class to the Requested Attorneys' Fees**

46. As noted above, the Claims Administrator disseminated or caused to be disseminated 37,868 Notices to potential Settlement Class members pursuant to the Court's Preliminary Approval Order. Evans Decl. ¶9.

47. The deadline for Settlement Class Members to request exclusion from, or object to, the Settlement is October 23, 2025. To date, Lead Counsel and the Claims Administrator have not received a single objection to any aspect of the Settlement, including the requested attorneys' fees, and only received one request for exclusion. *See* Evans Decl., ¶¶14-15.

**VII. REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE**

48. Pomerantz has incurred $46,850.66 in litigation expenses in connection with the prosecution of the Action. Rosen has incurred $17,588.65 in litigation expenses in connection with the prosecution of the Action. Lead Counsel's total expenses are $64,439.31. These expenses were reasonable and necessary for the prosecution of the Action.

49. From the outset, Lead Counsel was aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, we took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

50. A listing of the expenses incurred by Pomerantz compiled from the regularly maintained records, are set forth in the Szydlo Fee Declaration (¶7). A listing of the expenses incurred by Rosen compiled from the regularly maintained records, are set forth in the Rosen Fee Declaration (¶7).The

14

JOINT DECLARATION OF BRENDA SZYDLO AND JONATHAN STERN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS, 2:23-cv-08659-HDV (MARx)

expenses incurred pertaining to this case are reflected in books and records of Pomerantz and Rosen, which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred.

51. Litigation expenses for which Lead Counsel seeks reimbursement include, *inter alia*, expert fees, investigator fees, travel expenses, and filing fees. Each of these expenses were reasonable and necessary for the successful prosecution of this Action. Notably, the reimbursement request here of $64,439.31 is significantly less than the $125,000 maximum Lead Counsel stated it may request in the Notice. Dkt. No. 61-3 (Notice), ¶5.

52. In light of the complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class.

## VIII. NOMINAL AWARDS TO PLAINTIFFS ARE WARRANTED

53. Plaintiffs have spent their time leading this Action on behalf of the Class and each request an award of $2,000, or $4,000 in total, to compensate them for their time and effort overseeing this Action pursuant to the PSLRA.[6]

54. Plaintiffs have devoted a substantial amount of time to this case—30 hours in total. Lead Plaintiff Michael Denisevich devoted approximately 20 hours to this Action and Plaintiff Kevin Rudisill devoted approximately 10 hours to this Action. Mr. Denisevich and Mr. Rudisill each spent time monitoring the progress of the litigation, reviewing Court filings, and communicating and corresponding with Lead Counsel throughout the pendency of the Action regarding the litigation and Settlement. *See*

[6] True and correct copies of the Declarations of Michael Denisevich and Kevin Rudisill are attached hereto as Exhibits 4 and 5, respectively.

Exhibits 4-5 (Plaintiffs' Declarations). As such, they respectfully request that the Court grant an award of $2,000 to each of them, or $4,000 in total.

55. As explained in the Fee Brief, awards of similar magnitude are commonly awarded to plaintiffs in securities class actions. Thus, the requested awards to Plaintiffs are both fair and reasonable.

56. Moreover, to date, neither Lead Counsel nor the Claims Administrator has received any objections to their request. *See* Evans Decl., ¶15.

57. Plaintiffs previously filed a [Proposed] Final Judgment Approving Class Action Settlement (Dkt. No. 61-6) providing for the relief requested herein. For the Court's convenience, a true and correct copy of the [Proposed] Final Judgment Approving Class Action Settlement is attached hereto as Exhibit 6.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of October, 2025.

*/s/ Brenda Szydlo*
Brenda Szydlo

*/s/ Jonathan Stern*
Jonathan Stern

16

JOINT DECLARATION OF BRENDA SZYDLO AND JONATHAN STERN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS, 2:23-cv-08659-HDV (MARx)

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Brenda Szydlo*
Brenda Szydlo

JOINT DECLARATION OF BRENDA SZYDLO AND JONATHAN STERN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS, 2:23-cv-08659-HDV (MARx)